**NOT FOR PUBLICATION OR CITATION**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON

CIVIL ACTION NO. 05-CV-270-JBC

ROBERT CHARLES MEEK                                          PETITIONER

VS:                     **MEMORANDUM OPINION AND ORDER**

FEDERAL MEDICAL CENTER                                        RESPONDENT

Robert Charles Meek, who is confined in the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He has paid the $5.00 filing fee.

This matter is before the court for screening.  28 U.S.C. § 2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, 28 U.S.C. § 1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action:  (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

RESPONDENT

The named respondent is FMC-Lexington.  To the extent the petitioner asserts a claim relating to the execution of his sentence, the proper respondent would be the warden of FMC-Lexington.

CLAIMS

The petitioner alleges that his due process rights, under the Fifth Amendment to the United States Constitution, were violated when a Disciplinary Hearing Officer ("DHO") imposed various disciplinary sanctions against him.  The sanctions were assessed  when the petitioner was confined in a  Bureau of Prisons ("BOP") prison camp facility, FCI-Cumberland, located in Maryland.  To the extent that the petitioner has satisfied most of the disciplinary sanctions imposed against him, his challenges to those sanctions are moot.  To the extent that the petitioner still faces the loss of 40 days of good time credit, he asserts a Due Process violation and submits this petition seeking a writ of habeas corpus under § 2241.

ALLEGATIONS OF THE PETITION
1.  Disciplinary Charges

On December 30,  2003, at 10:30 a.m., a staff member at FCI-Cumberland filed an Incident Report in which he charged the petitioner with violating several BOP inmate offenses described in 28 C. F. R. § 541.13, Table 3.  The Incident Report states that FCI-Cumberland prison camp staff found various items of contraband hanging in bags in the pole building of the camp, an unsecured building near the area where the

2

petitioner had been assigned to work.[1]  Prison staff discovered the items on December 30, 2003, five days after the petitioner's wife, Jacqueline Meek, had visited the petitioner on December 25, 2003.

After  FCI-Cumberland staff contacted Jameco Electronics , they learned that the petitioner's wife had in fact ordered and bought the batteries on May 12, 2003. Staff determined that she was responsible for the delivery of the contraband items to the prison camp property and that the petitioner was aware of or involved in the delivery.  When staff questioned the petitioner about his wife's purchase of the batteries, the petitioner at first denied any knowledge of or involvement by his wife in the purchase of the batteries.  When confronted with the prison staff's confirmation that his wife had purchased the batteries, however, he admitted that his wife had bought them.[2]

The petitioner was initially charged with the following infractions:   (1) attempted possession of anything not authorized (Code No. 305A); (2) lying or providing a false statement to a staff member (Code No. 313); and (3) conduct which disrupts or interferes with the security or running of a BOP facility (Code No. 399). One hour after the filing of the initial Incident Report, the charging FCI-Cumberland

---

[1]

The items consisted of a bottle of Cognac, a bottle of gin, a bottle of Hydroxycut Capsules, two "Girls Gone Wild" videos, a gallon of Creatine Fizz Fuel (orange flavor) in powder form; a bottle of Benadryl Allergy tablets, a box of antifungal cream; a bottle of Caladryl lotion; a pair of running shoes; and a bag of eight motors manufactured by Jameco Electronics.

[2]

While not entirely clear from the record, it appears that the petitioner admitted that the eight Jameco batteries were intended either to be used to tattoo another inmate, or for another inmate, Lynnwood  C. Sharpless, to use to develop a tattoo gun to be sold on the street.

staff member filed an amended Incident Report, in which he added a charge attempting

to possess intoxicants (Code No. 222A).[3]

Further action on the Incident Report(s) was suspended on December 31, 2003,

in order to allow the FBI to decide whether criminal prosecution was warranted.  The

FBI declined to prosecute.  On February 19, 2004, the Unit Disciplinary Committee

("UDC") at FCI-Cumberland conducted a hearing, after which it referred the charges

to the DHO for disposition.

## 2.  DHO Report

On March 10, 2004, the DHO conducted a hearing.  The DHO's report is dated

July 9, 2004.[4] The DHO dismissed the 313 charge (lying or providing a false

statement to a staff member) and the 339 charge (conduct which disrupts or interferes

with the security or running of a BOP facility), finding that there was insufficient

evidence to support a 339 charge.  He found the petitioner guilty of the 305A charge

(attempted possession of anything not authorized) and the 222A charge (attempting

or planning to make, possess, or use intoxicants).  In his report, the DHO concluded

---

[3]

According to the provisions of 28 C. F. R. § 541.13 (b), "Aiding another person to commit any of these offenses, attempting to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offense itself.  In these cases, the letter "A" is combined with the offense code.  For example, planning an escape would be considered as Escape and coded 102A.  Likewise, attempting the adulteration of any food or drink would be coded 209A."

[4]

In his report, the DHO acknowledged a delay between the hearing date and the date of his report.  He explained that his unusually high volume of hearings prevented his earlier preparation of a report.  He stated that the petitioner's time for appeal would not begin to run until a copy of his report was delivered to the petitioner.

that for several reasons, the greater weight of the evidence pointed to the petitioner's

guilt on the two aiding-and-abetting charges.

The DHO determined that the petitioner's testimony  and the testimony of his

witnesses  lacked credibility.  First, he noted that the petitioner admitted that his wife

purchased the batteries only after he was confronted with independent confirmation

that she had done so.  The DHO characterized the petitioner as a liar in this regard.

The DHO also found relevant the fact that the petitioner had given different and

inconsistent explanations to the reporting officer and the UDC about his knowledge of

his wife's involvement in procuring the contraband.

Second, the DHO noted that the petitioner claimed that his wife bought the

batteries for another inmate, Lynnwood Sharpless.  He entirely discounted that

contention, however, because according to information from Jameco Electronics,  the

petitioner's wife had purchased the batteries on May 12, 2003.  According to inmate

Sharpless's testimony and release history,  Sharpless had been released from FCI-

Cumberland two-and-a- half months previously, on February 24, 2003.  On this issue,

the DHO explained in his report as follows:

> "It defies reason that Mrs. Meek would purchase and arrange to have
> delivered items to FCI-Cumberland on behalf of an inmate that transferred
> from the facility three months earlier.  Accordingly, the DHO gives no
> weight to Meeks' statements as they are contradictory and were easily
> proven to be false."

[DHO Report, p. 3, Record No.1 (Attachment)].

Third, the DHO  stated that he considered the affidavit of Todd Bussert, which

the petitioner had offered in his defense.  The DHO gave little weight to Bussert's affidavit, finding that ". . .it does little to prove any inmate other than MEEK [petitioner] possessed the electric motors."  [*Id*.]  The DHO further concluded that Bussert's affidavit was based solely on information he obtained from the petitioner's wife and a woman identified as "Ms. Foy."  The DHO determined that Bussert's affidavit did not reflect an independent investigation of the validity of either person's statements.

Fourth, the DHO found persuasive the location of the electric motors and the intoxicants.  They were discovered in an unsecured out-building near where the petitioner was assigned to work.

In his report, the DHO amended the charge of "the act of possession of anything not authorized" (Code. No. 305) to a finding that the petitioner "aided, attempted or planned to possess anything not authorized (Code No. 305A)."  [*Id*., p. 4.]  The DHO stated that he made this amendment in response to the petitioner's appeal of his decision to the BOP's Regional Director.  The DHO stated in § VII of his Report, "*Reason for Sanction or Action Taken*," that "Aiding, attempting or planning to make, possess, or use intoxicants and possession of anything not authorized will not be permitted.  Actions like this threaten the security and orderly running of the institution . . . . The above listed sanctions are imposed to impress upon you the seriousness and inappropriateness of your actions. . . ."  [*Id*.]

3. Sanctions Imposed

6

_____The DHO disallowed a total of 40 days of good-time credit; imposed a total of 30 days in disciplinary segregation; imposed 90 days of commissary restrictions; and revoked 12 months of visiting privileges.  Following the DHO hearing, the petitioner was transferred to FMC-Lexington.

## RELIEF REQUESTED

_____The petitioner seeks the reinstatement of the 40 days of good- time credit which he was ordered to forfeit as a result of the DHO Report.

## DISCUSSION
### 1.  Proper Forum

Claims which challenge the execution of sentence, such as issues concerning the computation of parole or sentence credits, are properly raised under §2241 in the district where the petitioner is  incarcerated.  *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996); *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir.1991); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 986) (per curiam); *Cohen v. United States*, 593 F.2d 766, 770-71 (6th Cir. 1979); (per curiam); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir.1977).  As the petitioner is currently incarcerated in the Eastern District of Kentucky, the petitioner has filed his petition in the proper court.

### 2.  Exhaustion of Remedies

Petitioners seeking relief under § 2241 are required to exhaust judicially created administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *Colton v.*

*Ashcroft*, 299 F. Supp.2d 681, 689 (E. D. Ky. 2004); *see also Leslie v. U.S.*, 89 Fed.Appx. 960, 961, 2004 WL 253362, \*\*2 (6th Cir.(Ky.) February 9, 2004) (not selected for publication in the Federal Reporter) ("Finally, it is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir.1992).").

The Bureau of Prisons ("BOP") has created administrative remedies for federal prisoners bringing a 28 U.S.C. § 2241 petition, which are set forth in 28 C.F.R. §§ 542.10-.16 (1987). According to 28 C.F.R. § 542.14(d)(2), DHO appeals are to be submitted initially to the Regional Director for the region where the inmate is currently located. Submissions of appeals to the Regional Director are governed by 28 C.F.R. § 542.15.[5]

The next and final step in the BOP's administrative remedy process is the filing of a BP-11 appeal with the BOP's Central Office.

> . . . An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.

---

[5]

28 C.F.R. § 542.15(a) provides as follows:

"An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. . . . When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part.

28 C.F.R. § 542.15(a).

The petitioner attached an incomplete copy of his BP-10 appeal, which he states was filed by counsel.  The BOP's Regional Director for the Mid-Atlantic Region, K. M. White, denied the petitioner's BP-10 appeal on July 20, 2004.  The petitioner alleges in his § 2241 petition form that he filed a BP-11 appeal with the BOP's Central Office, but that it was denied in November, 2004.  Although the petitioner did not attach the Central Office's denial of the BP-11, the court is satisfied that the petitioner has sufficiently  demonstrated his exhaustion efforts.  Although he has established that fact,  the court concludes that the petitioner's claim suffers from another fatal defect and must be dismissed on the merits as frivolous.

### 3.  Dismissal on the Merits

Although the petitioner does not elaborate much in his petition form as to the grounds on which he bases the instant § 2241 petition, he did attach the BP-10 appeal he filed through counsel.  That document gives some guidance to the court as to the claims he is asserting in this petition.  In the BP-10 appeal, the petitioner argued that the DHO's decision was based on insufficient evidence, and that the DHO gave greater weight than necessary to the testimony of institution staff.   Petitioner asserted, through counsel, that the DHO ignored exculpatory evidence, such as the fact that the contraband was found in an area where he (petitioner) was not allowed access.

The petitioner disputed the DHO's conclusion that upon his initial questioning, he had not been truthful when he denied any knowledge about his wife's purchasing

9

the batteries.  The petitioner states only that when he was first questioned, he admitted that earlier in the year (2003) his wife had purchased motors, but that she had done so on behalf of another inmate, Lynnwood Sharpless.  He denied that his wife mailed the motors to FCI-Cumberland.  He also argued that because the running shoes found in one of the bags were not his size, the contraband had no connection to him.  He argued essentially that he had no idea how the contraband items made their way onto the premises of FCI-Cumberland.

To the extent that the petitioner disagrees with the DHO's decision, the petitioner fails to state a legitimate Fifth Amendment claim.  The petitioner does not allege that he was denied a hearing as required by *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974), or was otherwise deprived of due process of law in connection with the procedures of the disciplinary hearing.  On the contrary, the petitioner merely disputes the DHO's evaluation of the petitioner's credibility and assessment of other evidence.

Federal courts, however, do not assess credibility or weigh the evidence when reviewing a disciplinary conviction.  A disciplinary action should be upheld if it is supported by "some evidence." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985). This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.  In *Superintendent v. Hill*, the Supreme Court held that:

> [a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in

10

order to satisfy the minimum requirements of procedural due process . .
. . [a]scertaining whether the "some evidence" standard is satisfied does
not require examination of the entire record, independent assessment of
witnesses' credibility, or weighing of the evidence, but, instead, the
relevant question is whether there is any evidence in the record to
support the disciplinary board's conclusion.

*Id.* at 454-55.

Therefore, a district court has no authority under the guise of due process to

review a disciplinary committee's resolution of factual disputes. *Id.* at 455.  A review

of a decision of a prison disciplinary board does not involve a re-determination of an

inmate's innocence or guilt.  A district court merely ensures that a disciplinary decision

is not arbitrary and does have evidentiary support. *Id.* at 457.  The only question here

is whether the DHO had "some evidence" to ensure fairness and justify his findings.

In the instant proceeding, there was some evidence that the petitioner

committed the offenses with which he was charged, although the petitioner strongly

disputes that evidence. *See Superintendent v. Hill*, 472 U.S. 445 at 454.  The

information the prison staff received about the petitioner's wife's purchase of the

motors was "some evidence."  The fact that the petitioner gave inconsistent stories

concerning his wife's purchase of the motors, and admitted her involvement only when

confronted with confirmation of the purchase by Jameco Electronics, is "some

evidence" upon which the DHO could base his findings.  Coupled with that is the fact

that the DHO determined the petitioner's explanation – that his wife bought the

motors for inmate Lynnwood Sharpless – to be devoid of merit because Sharpless had

been released from custody two-and-a-half months prior to Mrs. Meek's purchase of

the motors, in May, 2003.

To the extent the petitioner is asserting that the testimony that DHO Smart relied upon lacked credibility, independent assessment of witnesses' credibility by a district court is not required.  *Superintendent*, 472 U.S. at 455.  Moreover, the credibility determinations of the hearing officers cannot be disturbed on appeal. *Wagner v. Seely, et al.*, 915 F.2d 1575 (7th Cir. 1990) (unpublished), *cert*. *denied*, 501 U.S. 1219 (1991).

To the extent that the petitioner may be complaining about the DHO's amending the charges against him after the petitioner had begun the BOP administrative exhaustion process, that claim also fails.  The petitioner had adequate notice of the "aiding and abetting"charge.  *See Castellanos v. Snyder*, 230 F.3d 1357, 2000 WL 1434590, **1 (6th Cir.(Ky.)) (Unpublished Disposition), in which petitioner Castellano similarly and unsuccessfully argued that "aiding" an attempt to escape was not a valid charge.  The Sixth Circuit stated as follows:

> "Drawing an analogy to criminal indictments, the charging document was sufficient because it contained the elements of the offense charged and fairly informed Castellanos of the charge against which he had to defend. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).  Aiding, attempting, and making plans to escape are all considered the same as escape itself under 28 C.F.R. § 541.13(b), code 102A, and do not require an actual escape. The wording of the charge was an acceptable paraphrasing of the regulation. *See Sizemore v. Turner*, No. 93-2173, 1994 WL 445804, at *2 (7th Cir. Aug. 17, 1994) (concluding that the evidence supported a finding that the prisoner "aided another's attempt to escape").
>
> We agree with the district court that there was sufficient evidence to support the DHO's findings.  Inmates Rodriguez and Morejon testified

12

that Castellanos told them about an escape plan. Although Castellanos questions Morejon's credibility, federal courts do not assess credibility or weigh the evidence when reviewing a disciplinary conviction. *See Superintendent v. Hill*, 472 U.S. 445, 454-56 (1985).  It is enough that the record contains some evidence that Castellanos committed the offense. *See Id.* at 454."

*Castellanos v. Snyder*,  2000 WL 1434590, \*\*1. *See also  Yates v. Young*, 772 F.2d 909, 1985 WL 13614, \*\*1 (6th Cir.(Tenn.) August 28, 1985) (Unpublished Disposition) ("Although the stated charge was possession of a sharpened instrument, plaintiff was notified that the charge was based on the discovery of this weapon in his cell.  Attempting an offense is considered to be the same as commission of the offense itself. *See* 28 C.F.R. § 541.13(b).  Second, the guilty finding was supported by sufficient evidence. *See Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985).").

 The petitioner's claim lacks merit and will therefore be dismissed with prejudice, as frivolous.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     Petitioner Robert Charles Meek's petition for writ of habeas corpus is **DENIED**.

(2)     This action is **DISMISSED**, *sua sponte,* from the docket of the court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

Signed on October 31, 2005


JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY